# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**ADAM SAVETT, individually and on behalf of all others similarly situated,**

    **Plaintiff,**

**vs.**

**ANTHEM, INC., an Indiana corporation,**

    **Defendant.**

**CASE NO. 1:18-CV-274**

**JUDGE PAMELA A. BARKER**

**MEMORANDUM OPINION AND ORDER**

Plaintiff Adam Savett brings the present suit against Defendant Anthem, Inc. for calls made by Anthem to Savett's landline phone. Savett argues that the calls violated the Telephone Consumer Protection Act ("TCPA") under 47 U.S.C. § 227 *et seq*. Anthem says that it had consent to call Savett's landline and that the TCPA does not prohibit the disputed calls.

Anthem seeks summary judgment. Savett opposes.

For the foregoing reasons, Anthem's motion for summary judgment is **GRANTED**.

**I.    Background**

On May 8, 2006, an unnamed individual (hereinafter "Member") applied for a Medicare Advantage membership with Anthem. (Doc. No. 29-1 at ¶ 10.) The Member gave a residential landline phone number ending in 0299 (the "0299 number") as his primary phone number. (*Id.*) On or about February 2009, Savett became the owner of the 0299 number after it was reassigned to him. (Doc. No. 32-2 at 22:21-22.) As a consequence of the number's reassignment, Savett received calls intended for the 0299 number's previous owner. (Doc. No. 31-2 at 26:1-13.)

From the time of the reassignment until mid-2017, Anthem made nine prerecorded calls to the 0299 number. (Doc. No. 32-1 at 36:22-37:19.) The calls were made through an Anthem

affiliate, Eliza, in an effort to reach the Anthem Medicare Advantage Member who previously owned the phone number. (Doc. No. 29-1 at ¶ 9.) Anthem provided Eliza with the number for the call. (*Id.* at ¶¶ 7-8.)

During the same time period, other Anthem affiliates' live agents called the 0299 number seven times on Anthem's behalf. (Doc. No. 32-3 at 6; Doc. No. 32-1 at 53:8-16; 83:10-84:11.)

On June 15, 2017, Savett received a call from a live Anthem agent. (Doc. No. 29-1 at ¶ 19.) Savett informed the Anthem agent of the number reassignment. (*Id.*) The 0299 number was placed on Anthem's internal do-not-call list. (*Id.*)

The nine prerecorded calls that form the basis of the lawsuit fall into three categories: calls concerning flu shots (four calls), calls seeking the email address of the Member (two calls), and calls regarding telehealth and online services (three calls). Anthem provided scripts of each of the calls. The relevant portions of each call are summarized below.

   a. **Flu Shot Calls**

Savett received four calls regarding flu shot reminders. The script provides for different prerecorded messages to play based on the called individual's responses to the call's prompts. Despite the individual's answers, however, the substantive information provided by Anthem's affiliate during the call is the same. The flu shot calls provide the following information:

> Protecting yourself from the flu is easier than you might think. Getting a flu shot is your best chance to avoid the flu. So, just like every year, you've got a choice. Get the flu shot and avoid the flu or don't and risk getting sick. Keep in mind, the flu shot doesn't cause the flu. It keeps the flu away so you don't have to lie in bed for days, feeling sick.

(Doc. No. 29-2 at 7.)

Whether the individual states that they are getting the flu shot or not, the following information is provided:

> [The flu shot] is recommended for everyone age 6 months and older. It's especially important for anyone with a chronic condition and those who live with or take care

of someone at risk of complications from the flu. The good news is that the flu shot is a covered benefit for most of our members when they get it at a participating provider. And, in addition to your doctor's office there are many other places where you can get a flu shot—like your local pharmacy or grocery store.

(*Id.* at 10.)

If the Anthem member is 65 or older, the call continues: "You may also want to ask your doctor if a pneumonia vaccine could be right for you—since it is recommended for everyone 65 and older." (*Id.* at 9.)

If the individual answering the call is not the intended recipient and says so, the call script asks them to take a message. (*Id.* at 12.) If they accept, the call provides the substantive information as above. If the individual declines to take a message, then the call ends without communicating any of the information about the flu shots.[1] (*Id.* at 13.)

### b. Email Address Collection Calls

The second variety of calls Savett received at the 0299 number requests the Member's email address. Like the flu shot calls, the called individual's responses to the prompts determine which parts of the prerecorded script are played. In substance, however, the call conveys the following:

> As your health plan, we want to give you the latest news about your benefits in a way that works best for you. A lot of our members like to get emails from us when we have important information to share. We'd love to send you an email from time to time with details about your benefits, health programs, or other plan information.

(*Id.* at 25.)

If the individual provides their email, the following message plays:

---

[1] Anthem provided two scripts for the flu shot calls. The scripts differ slightly, though both scripts end the call without providing the substantive information if the individual answering the call states that he or she is not the individual Anthem is trying to reach and does not consent to taking a message. The script of the second flu shot call states the following: "Do you know how easy it is to protect yourself from the flu? Getting the flu shot is the best way – and you can get one at no cost. Simply go to your primary care provider, or visit a local health department. Plus, adults with . . . coverage can get their flu shots at a network pharmacy for free. Doctors recommend everyone 6 months of age or older needs a flu shot every year. This includes pregnant women. The flu shot protects against both seasonal flu and H1N1 flu. When you go for a flu shot, also ask about a pneumonia shot. A pneumonia shot is most important for those age 65 or older, children under the age of 5 and people with certain health conditions." (Doc. No. 29-2 at 18.)

3

> Thank you. We'll send you a confirmation email in the next few weeks. If you do not receive a confirmation email, please log on to <Anthem Website> to double check your email preferences. Keep in mind, you can change your email preferences at any time in your online profile.

(*Id.*)

The message also states:

> By the way, we mail a large packet of materials every September called the Annual Notice of Changes. This set of materials lets you know what to expect in the coming year. It includes your January plan changes, Evidence of Coverage, a list of covered drugs or formulary, and tips for finding doctors. We can skip paper, and quickly send electronic versions of these documents to your email.

(*Id.*)

If the individual is not the person Anthem is trying to reach and they decline to take a message, the information does not play. (*Id.* at 27.) If Anthem is unable to verify that the individual is the Anthem member it is trying to reach, the message does not play. (*Id.* at 29.)

### c. Telehealth and Online Services Calls

The final type of call Savett received concerned telehealth information. The script for that call reads:

> We're calling to tell you about LiveHealth Online, an easy and convenient way to see a doctor or therapist using your computer or mobile device. So when your own doctor isn't available, use LiveHealth online to see a doctor 24 hours a day, 7 days a week. They can assess your condition and send a prescription to the pharmacy you select, if needed. Using LiveHealth Online, you can also visit with a therapist by appointment, every day of the week. It's a great way to get the care you need from the comfort and privacy of your home. Plus, online visits using LiveHealth Online are no cost for you as [a] . . . Medicare member and it's free to register. Getting started is easy, all you have to do is register.

(*Id.* at 33.)

If the member declines, the following message plays:

> Well, you may be interested to know that based on our user feedback survey, almost everyone who's used LiveHealth Online said they'd use it again. It's such a convenience to be able to see a doctor or therapist when you need one, wherever you are—at home, when you're traveling, or even if you want to talk with a doctor in the middle of the night. Keep in mind, it doesn't cost you anything to sign up or

use LiveHealth Online. It just means you're a few clicks away from seeing a doctor or therapist. So we hope you don't mind if we ask you one more time . . . .

(*Id.* at 34.)

Just as with the other two types of calls, if Anthem is unable to verify that the individual called is an Anthem member or if the individual declines to take a message, then the above information does not play. (*Id.* at 37-39.)

## II. Standard of Review

The Court grants summary judgment if the movant demonstrates that there is no genuine dispute of material fact and he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court views the evidence, and draws all reasonable inferences, in the light most favorable to the non-moving party. *E.g., Rhinehart v. Scutt*, 894 F.3d 721, 735 (6th Cir. 2018).

## III. Discussion

Plaintiff's sole cause of action in this matter is a violation of the Telephone Consumer Protection Act ("TCPA"). (Doc. No. 1 at 8.) The TCPA, in relevant part, makes it unlawful "for any person within the United States . . . to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, . . . or is exempted by rule . . . ." 47 U.S.C. § 227 (b)(1)(B). In addition to the emergency purposes exemption, calls that fall into any of the following categories are exempted by rule: calls not made for a commercial purpose, calls made for a commercial purpose that do not include an advertisement or constitute telemarketing, and calls that deliver a "health care" message for a "covered entity" as defined by law. 47 C.F.R. § 64.1200(a)(3).

Defendant Anthem argues that the calls placed to the 0299 number fall under the TCPA's

exemptions. (Doc. No. 29 at 9.) Anthem also argues it did not violate the TCPA because it had the Member's consent to call the 0299 number. (*Id.* at 29.) Anthem says that it was reasonable for Anthem to continue contacting the number the Member provided because it did not have knowledge that the phone number was reassigned to Savett. (*Id.*)

Plaintiff Savett argues that no exemptions apply. (Doc. No. 31 at 12.) He also argues that Anthem's lack of procedures for recognizing reassigned numbers and Anthem's unheeded notice of the number's reassignment are factual issues to be resolved, precluding summary judgment. (*Id.* at 30.)

The Court first assesses whether any of the calls made to the 0299 number fall under the exemptions to the TCPA. Calls made pursuant to an exemption do not require the consent of the called party.

### a. The Non-Telemarketing Exemption

Under the TCPA, the FCC may exempt from TCPA liability calls made to residential landlines that are "made for commercial purposes" but "do not include the transmission of any unsolicited advertisement." 47 U.S.C. § 227(a)-(b). Accordingly, the FCC issued the following regulation:

> [N]o person or entity may [i]nitiate any telephone call to any residential line using an artificial or prerecorded voice to deliver a message without the prior express written consent of the called party, unless the call . . . is made for a commercial purpose but does not include or introduce an advertisement or constitute telemarketing.

47 C.F.R. § 64.1200(a)(3)(ii)-(iii).

The FCC does not define "commercial purpose," but has stated that the non-commercial purpose exemption serves to exempt "prerecorded messages that are non-telemarketing, informational calls, such as calls by or on behalf of tax-exempt non-profit organizations, calls for political purposes, and calls for other noncommercial purposes, including those that deliver purely

informational messages such as school closings." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 27 FCC Rcd. 1830, 1831 (2012).

Courts analyzing similar calls have done so under the non-telemarketing exception, thereby implicitly deciding that the calls have a commercial purpose. *See Williams v. National Healthcare Review*, No. 2:15-cv-0054-RFB-PAL, 2017 WL 4819097, at *7-8 (D. Nev. Oct. 25, 2017) (finding that calls inquiring about consumer's health insurance status fell under the non-telemarketing exemption); *Smith v. Blue Shield of California Life & Health Insurance Company*, 228 F. Supp. 3d 1056, 1066 (C.D. Cal. 2017) (holding that calls regarding insurance plan information were exempt under the non-telemarketing exemption). The Court likewise proceeds under the assumption that the calls have a commercial purpose.

To fall under the non-telemarketing exemption, the calls may not introduce an advertisement or constitute telemarketing. 47 C.F.R. § 64.1200(a)(3)(iii). The term "advertisement means any material advertising the commercial availability or quality of any property, goods, or services." 47 C.F.R. § 64.1200(f)(1). The term "telemarketing means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(12). "Offers for free goods or services that are part of an overall marketing campaign to sell property, goods, or services constitute [an advertisement]." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, 14097-98 (2003).

All of Anthem's calls fall under the non-telemarketing exemption. Plaintiff Savett argues that the calls were meant to induce the consumer to engage in commercial activity by getting a flu shot from an Anthem provider or signing up for Telehealth services provided by Anthem. (Doc. No. 31 at 7-8.) At no point, however, was Anthem selling any product or using the calls as a

7

pretext to sell a product in the future. The calls all "lack[ed] the commercial components inherent in ads." *Sandusky Wellness Center, LLC v. Medco Health Solutions, Inc.*, 788 F.3d 218, 222 (6th Cir. 2018).

### 1. The Telehealth Calls

Other courts have found that calls analogous to the telehealth calls fall under the exemption.

Anthem's telehealth calls are similar to those in *Smith*. In *Smith*, the consumer received a call that "notified recipients that they should have received information about changes to their insurance plan, encouraged them to seek out information about their plan by examining the information packet and visiting Blue Shield's website, and directed them to call the member service number (as opposed to the sales department) to resolve any questions or issues." *Smith*, 228 F. Supp. 3d at 1066. The court found that the call was informational and therefore not telemarketing. *Id.*

The *Smith* court analyzed cases distinguishing between informative messages and telemarketing. Examples of informative messages included: a welcome text after opting into a rewards program, a text message with an activation code, and a text message asking a consumer to complete an online order. *Id.* (collecting cases). In contrast, telemarking calls included: an ad for a 99-cent root beer float, a message to encourage consumer to call for a cash advance, calls for individual to redeem retail chain "points," a fax encouraging the purchase of a certain stock, and a message offering a discount in store or online. *Id.*

In *Smith*, the court expressly rejected the plaintiff's theory that because Blue Shield's overarching goal was to retain customers and receive premiums, the call had the "clear implication of encouraging purchase of a good, product, or service." *Id.* at 1068. The court stated that such a holding "would transform practically *all* communication from any entity that is financially

8

motivated and exchanges good or services for money into telemarking or advertising" and contravene the definitions in the regulations. *Id.*

Just as in *Smith*, Anthem's telehealth calls were meant to provide information to members about their insurance plan's benefits. Also, like the *Smith* calls, the telehealth calls were purely informational, and members could take further steps if they desired but were not being asked to make any purchase. Anthem provided the telehealth services for free to members, as explained in the message. (Doc. No. 29-2 at 33.)

Similar to the call at issue in *Suriano*, Anthem's members had already paid for the service Anthem was describing by virtue of them being Anthem members. *Suriano v. French Riviera Health Spa, Inc.*, No. 18-9149, 2018 WL 6702749, at *3 (E.D. La. Dec. 20, 2018) (holding that texts encouraging consumer to find out more about personal training services were exempt because the consumer had already joined the gym and signed up for the personal training services). The lack of products for purchase distinguishes Anthem's calls from the fax[2] at issue in *Physicians Healthsource* where the court found that summary judgment was not proper because a "reasonable fact-finder . . . could reasonably conclude that the fax, at least in part, promotes the quality and availability of Stryker products." *Physicians Healthsource, Inc. v. Stryker Sales Corp.*, 65 F. Supp. 3d 482, 489 (W.D. Mich. 2014).[3]

The telehealth calls were purely informational and therefore are exempt.

---

[2] Although the message at issue was a fax, the FCC's regulations likewise prohibit "unsolicited advertisements" by facsimile. 47 C.F.R. § 64.1200(a)(4).

[3] The parties dispute the applicability of another case, *Fulton v. Enclarity, Inc.*, 907 F.3d 948 (6th Cir. 2018), concerning unsolicited fax advertisements. That case, however, was recently vacated and remanded to the Sixth Circuit for further consideration in light of the Supreme Court's decision in another case concerning unsolicited fax advertisements. *See Enclarity Inc. v. Fulton*, No. 18-1258, 2019 WL 4921145, at *1 (Oct. 7, 2019).

### 2. The Email Collection Calls

The email collection calls are comparable to the faxes and calls at issue in *Mauthe* and *Williams*. In both of those cases, although businesses sent messages to collect information, the courts found that the calls fell under the non-telemarketing exemption.

In *Williams*, the defendant company called a patient with a prerecorded message after discharge from the hospital in an effort determine if the patient had insurance and to determine if the patient was eligible for financial assistance. *Williams*, 2017 WL 4819097, at *2-4. The company helped non-insured patients apply for state and federal programs or charities to help pay for medical bills. If patients received coverage through the company's assistance and the hospital was paid for the patient's treatment, the company received a portion of the hospital's payment. *Id.* at *4.

Despite the fact that the company making the calls stood to gain from enrolling the non-insured patient in an insurance program, the court found that the calls were not telemarketing or advertising. *Id.* at *7. Likewise, in *Mauthe*, the Third Circuit recently held that faxes sent to confirm and update a health provider's information for its database, access which was sold to healthcare related organizations to use for claim authentication, provider directories, and other purposes, were not advertising. *Mauthe v. Optum Inc.,* No. 18-2894, 2019 WL 2262706, at *4 (3d Cir. May 28, 2019). The court noted that the faxes were not an "attempt to influence the purchasing decisions of any potential buyer" or a "pretext to more commercial solicitation." *Id.*

The courts in *Williams* and *Mauthe* found that messages collecting information were exempt from the statute, in spite of the fact that the defendants intended to monetize the data. In the present case, Anthem's collection of the email address is not for monetary gain, but simply to communicate electronically with its members. The email collection messages are therefore also exempt from the statute.

### 3. The Flu Shot Calls

Finally, in the context of the flu shot calls, similar to the calls in *Smith*, *Mauthe*, and *Williams*, Anthem's calls with flu shot information were not attempting to sell any products to the call recipients. Anthem's prerecorded messages stated that in most cases the immunizations were free for members. (Doc. No. 29-2 at 9.) Indeed, at least one other court has found that "flu shot calls [do] not contain telemarketing or advertising under the FCC's guidance." *Jackson v. Safeway, Inc.*, No. 15-cv-04419-JSC, 2016 WL 5907917, at *5 (N.D. Cal. 2016).

Even if the calls were effective at inducing a member to obtain a flu shot, Anthem is not in the business of providing or selling immunizations and was not attempting to do so through the telephone messages. In this way, Anthem's calls are like those in *Sandusky Wellness Center, LLC v. Medco Health Solutions, Inc.*, where the Sixth Circuit found that faxes sent by a pharmacy benefit manager to inform a doctor about which medications were covered by his patients' insurance fell under the exemption. 788 F.3d 218, 222 (6th Cir. 2018). In *Sandusky* the court found that the exemption applied because "in everyday speak, [the] faxes [were] not advertisements: They lack[ed] the commercial components inherent in ads." *Id*. The court also noted that its decision was in line with other courts finding the same in similar cases. *Id.* at 223 (collecting cases).

The flu shot reminder calls are notably distinguishable from the calls in *Chesbro*, a case in which a retail store's message encouraged the consumer to redeem points from the retailer's points program by making a purchase on its website. *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012). Because the call encouraged the individual to make future purchases at Best Buy, the Ninth Circuit found that it contained unsolicited advertisements. *Id.* The court's analysis considered the FCC's guidance that some calls may serve a "dual purpose" and implicate

11

advertising from the context of the information given. *Id.* (citing 18 FCC Rcd. 14014). According to the FCC, such dual purpose calls are prohibited under the TCPA. *Id.*

The reasoning in *Chesbro* is not applicable in the present case. Although Anthem sent the calls to encourage members to use their insurance benefits by receiving a flu shot, Anthem did not stand to gain monetarily from the vaccinations (except perhaps from costs saved down the line if it avoided having to pay for members' flu treatments). The calls were not dual-purpose, thinly veiled enticements to purchase a product or spend further money on Anthem's services. Indeed, Anthem was not asking the member to purchase a product from Anthem at the time of the call or at any time in the future. Instead, Anthem was informing the called consumers about the benefits of receiving the vaccination. Such informational messages are exempt from the TCPA under the non-telemarketing exception.

### b. The Other Exemptions

The parties also dispute the applicability of two other TCPA exemptions, the health care exemption and the emergency purpose exemption. Because the Court has determined that Anthem's calls to the 0299 number fall under the non-telemarketing exemption, the Court declines to decide whether the calls also fall under one of the other two exemptions Anthem claims.

### c. The Consent Requirement

Under the TCPA, consent is only needed if the calls placed to the consumer do not fall under one of the enumerated exemptions. As explained above, the Court has determined that Anthem's calls to Savett fall under the non-telemarketing exemption. The Court therefore does not reach the question of whether Anthem had the requisite consent for the calls, as consent was not necessary.

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS** Defendant's motion for summary

judgment.

**IT IS SO ORDERED.**

Dated: November 4, 2019				*s/Pamela A. Barker*
						PAMELA A. BARKER
						UNITED STATES DISTRICT JUDGE